Suzanne L. Gleaves v. Commissioner.
Gleaves v. Commissioner
Docket No. 7958.
United States Tax Court
1946 Tax Ct. Memo LEXIS 119; 5 T.C.M. (CCH) 666; T.C.M. (RIA) 46180; July 31, 1946
*119 Charles L. Gleaves, 70 Pine St., New York, N. Y., for the petitioner. William B. Springer, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case is based upon an application to redetermine a deficiency amounting to $572.50 which the Commissioner declared on the income tax return of petitioner for the year 1941. The question presented is whether or not petitioner suffered a loss by reason of the non-payment to her of $4,000 which she had paid to her husband, Charles L. Gleaves, as trustee for the purpose of developing certain patents during 1935. Findings of Fact Petitioner is an individual residing in New York City. Her income tax return for the calendar year 1941 was filed with the collector of internal revenue for the second district of New York. On October 2, 1935, petitioner's husband, a man by the name of Prussin and petitioner entered into an agreement whereby Charles L. Gleaves was to act as trustee. Prussin was to transfer to the trustee rights to manufacture and sell in the United States certain hydrocarbon products produced under a certain process embodied in a patent application which said Prussin had *120 made to the Patent Office, said hydrocarbons being for use in lamps, certain stoves and cigarette lighters, and Prussin agreed to transfer similar manufacturing rights to any subsequent patents received on the same materials. Petitioner paid to the trustee $4,000, which sum was to be used in the development of the manufacture and sale of these commodities, for which advance payment she was to receive 27 1/2 percent of the net income of the trust. All of the money advanced by petitioner was expended for the purposes of the trust except $59.97, which was returned by the trustee to the petitioner. The last payments in the promotion of the business of the trust were made on July 6, 1936. The trust never received any distribution under the terms of the trust agreement. In the fall of 1936 Prussin entered into an agreement with a financial backer to develop the manufacture and sale of fire kindlers and these two men established the Shur-Lite Kindler Co. This company became a bankrupt in November 1938. In the spring of 1937 the application made by Prussin for the patent referred to in the trust agreement was rejected by the Patent Office. On April 21, 1937, the trustee and the beneficiaries *121 of the trust entered into an agreement that the trust entered into on October 2, 1935, be dissolved and that the rights held by the trustee be sold, and the proceeds thereof be distributed to the beneficiaries, and the trustee was authorized to sell such rights for $10,000. At this time Prussin agreed to buy the rights from the profits which he anticipated making from the operation of the Shur-Lite Kindler Co. However, as stated above, the Shur-Lite Kindler Co. became a bankrupt in November 1938 and the rights, if any, based upon the rejected application for patent were never sold. Prussin continued in his efforts to develop hydrocarbon products through the agency of other financial backers, but there is no evidence that petitioner herein had any other contact with his activities. The petitioner never made any demand that Prussin or anyone else reimburse her for her advancement to the trust and assumed that Prussin had no money or other assets. In the schedule attached to her income tax return for 1941 she says: $4,000 advanced to Adolph A. Prussin in 1935 for the exploitation of an invention. S. Z. Gleaves was to receive certain interests in the patents, but patents were never *122 granted because of insufficient disclosures by inventor. Statute of limitations is believed to have barred in 1941 any claim for repayment. $59.97 of sums advanced remained unexpended in the hands of C. L. Gleaves as Trustee and has been returned. NET BAD DEBT. Opinion Although petitioner refers to her loss as a "net bad debt" obviously there is no question of bad debt involved in this case as there is no debtor-creditor relationship. She invested her money with a trustee under an agreement to receive 27 1/2 percent of the profits. Nether the trustee nor any of the beneficiaries occupied a position with her of debtor-creditor. Her entire position rests on the possibility of her having suffered a financial loss in the taxable year 1941 from a transaction entered into for profit. [1]
*123 However, it is obvious that the loss which petitioner suffered occurred when the trust estate in which she had invested ceased to have any value. With the exception of the investments by the beneficiaries the only assets of the trust were the rights, conveyed to the trustee by Prussin, which Prussin claimed, growing out of his application for the patent. This application being rejected in the spring of 1937 would strongly indicate that the rights which the trustee had based upon that application no longer had any value at that time. However, if these rights had any value at that time the only individual, according to the testimony, in a position to protect those rights was Prussin himself who agreed to purchase back the rights from the profits of the Shur-Lite Kindler Co. When this company became bankrupt in November 1938 the sole source of any hope of receiving material value out of the assets of the trust disappeared. The Commissioner has held in declaring this deficiency that petitioner's interest in this trust estate had lost all value prior to January 1, 1941. * We find nothing in the testimony to overcome the presumption arising out of the Commissioner's holding. There *124 is no question in this case but that petitioner herein did suffer a real loss and we have considerable sympathy with the contention in petitioner's brief that on general grounds she should be allowed to deduct such loss from her income tax. However, it is well established beyond argument that claimed losses must be proved to have occurred in the year in which claimed and they cannot be allowed in other years. See . In this case the taxpayer had claimed a loss based upon advice from a representative of the revenue department but the court held that it was not the advice of the revenue agent but the year of occurrence of the loss that controlled. See also . Judgment will be entered for the respondent. Footnotes
1. SEC. 23 [I.R.C.] DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) LOSSES BY INDIVIDUALS. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * * * *
(k) BAD DEBTS. - (1) GENERAL RULE. - Debts which become worthless within the taxable year; * * *↩
*. As amended by Tax Court order dated August 19, 1946.↩